Filed 1/4/22; Modified and certified for publication 1/11/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ERIC ALVIN COVERT, | B303663 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC629240) |
| v. | |
| FCA USA, LLC, | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Michelle Williams Court, Judge. Reversed and remanded with directions.

Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr.; Hawkins Parnell & Young, Barry R. Schirm and Ryan K. Marden for Defendant and Appellant.

Knight Law Group, Steve Mikhov, Roger Kirnos, Amy Morse; Century Law Group, Edward O. Lear, Rizza Gonzales; Greines, Martin, Stein & Richland and Cynthia E. Tobisman for Plaintiff and Respondent.

———————————————

A jury held automaker FCA US, LLC (FCA) liable to Eric Alvin Covert for breach of warranty under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.; the Song-Beverly Act) and awarded Covert $48,416 in damages and penalties. About two months after Covert filed the lawsuit, FCA served Covert with a settlement offer pursuant to Code of Civil Procedure[1] section 998 for $51,000, plus reasonable attorneys' fees and costs, in exchange for dismissal of the action with prejudice. Covert filed objections to the section 998 offer. Fifteen months later FCA served Covert with a second section 998 offer for $145,000 with otherwise identical terms. FCA appeals from postjudgment orders denying its motion to tax costs incurred by Covert, including expert witness fees; granting Covert's motion to tax costs incurred by FCA; and granting Covert's motion for attorneys' fees pursuant to Civil Code section 1794, subdivision (d).

On appeal, FCA contends both of its section 998 offers were valid, and because the jury awarded Covert less than the amount of either offer, the trial court erred in awarding Covert attorneys' fees and costs and denying FCA its costs. Covert responds that both offers were invalid for the reasons set forth in his objections, and the first offer was not in good faith because it was premature. We agree with FCA that both offers were valid. However, the trial court abused its discretion in failing to consider whether the first offer was made in good faith. As to the second offer, Covert did not meet his burden to show it was not made in good faith.

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

Accordingly, we reverse the trial court's orders and remand for the court to consider whether FCA's first offer was made in good faith. If the trial court finds the first offer was made in good faith, the court shall award FCA its costs reasonably incurred after the first offer was served and deny Covert his attorneys' fees and costs. If the court finds the first offer was not made in good faith, it shall award Covert his attorneys' fees and costs reasonably incurred prior to the date the second offer was served and award FCA its costs, including expert witness fees, reasonably incurred thereafter.

## BACKGROUND AND PROCEDURAL HISTORY

A. *The Complaint*

On August 3, 2016 Covert filed this action against FCA and H.W. Hunter, Inc.,[2] asserting causes of action for breach of express warranty and breach of implied warranty in violation of the Song-Beverly Act, and a cause of action for fraudulent concealment. As alleged in the complaint, Covert purchased a 2011 Dodge Ram 2500 pickup truck (the vehicle) from FCA through a Hunter dealership in Lancaster. The vehicle suffered from numerous defects, and between April 2011 and October 2015, Covert brought the vehicle to a licensed repair facility on 15 occasions for warranty repairs. Covert's complaints included problems with the vehicle's oxygen sensor, loss of power, engine noise, difficulty starting the engine, and multiple recalls, and on

---

[2] Hunter joined in both of FCA's section 998 offers to Covert, but it did not participate in the trial and is not a party to the appeal.

at least six occasions the check engine light was illuminated.  The complaint further alleged FCA knew and failed to disclose to Covert that the vehicle's integrated power module suffered from defects that had led to irregular transmission activity and frequent illuminations of the check engine light in dozens of FCA vehicle models, and these defects were the subject of multiple regulatory investigations, recalls, technical service bulletins, consumer complaints, and a federal class action lawsuit filed in 2013.

On his causes of action under the Song-Beverly Act, Covert sought rescission of the vehicle contract and reimbursement of his purchase money, consequential damages, prejudgment interest, attorneys' fees and costs, and a civil penalty of up to two times his actual damages due to FCA's willful misconduct.  Covert also sought punitive damages and prejudgment interest.[3]

B.    *FCA's Section 998 Offers*

On October 5, 2016—63 days after Covert filed the complaint—FCA served an offer to compromise pursuant to section 998 (first section 998 offer).  The offer stated in

---

[3]    The Song-Beverly Act provides in relevant part, "If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer." (Civ. Code, § 1793.2, subd. (d)(2).)  Although not specified in the complaint, we assume Covert's prayer for punitive damages was based on his cause of action for fraudulent concealment because the Song-Beverly Act provides for civil penalties, but not punitive damages.

4

substantial part: "Pursuant to [section] 998, defendants [FCA] and [Hunter], jointly, without admitting liability, offers [sic] to pay in exchange for dismissal of this action with prejudice in its entirety and return of the vehicle that is the subject of this lawsuit, the sum of $51,000.00. In addition, [FCA and Hunter], jointly offer to pay reasonable costs, expenses and attorneys' fees based on actual time expended pursuant to . . . section 1794(d) as stipulated by the parties or, if the parties cannot agree, upon motion to the Court having jurisdiction over this action. [¶] Except as set forth herein, above, each party shall bear its own attorneys' fees and costs of suit." The offer provided that it was made pursuant to *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899 (*Goodstein*) "in that a judgment will not be entered. Rather the Complaint will be dismissed."[4] The offer described the mechanism for acceptance of the offer, but it did not provide any details about the mechanics of payment, return of the vehicle, or dismissal of the action.

On November 7, 2016 Covert served objections to the first section 998 offer, contending the offer was vague, ambiguous, and

---

[4] In *Goodstein, supra*, 27 Cal.App.4th at pages 905-906 and footnote 4, this court concluded a defense settlement offer providing for dismissal of the action with prejudice was subject to former section 998, subdivision (b), which at the time applied to offers "to allow judgment to be taken in accordance with the terms and conditions stated at that time." This court reasoned, "[A]s between the parties thereto and for purposes of enforcement of settlement agreements, a compromise agreement contemplating payment by defendant and dismissal of the action by plaintiff is the legal equivalent of a judgment in plaintiff's favor." (*Id.* at p. 907.)

5

uncertain because it failed to: (1) specify whether it included post-acceptance attorneys' fees and costs; (2) address entitlement to prejudgment or postjudgment interest; (3) specify whether Covert was required to sign a separate release agreement; (4) contain a "good faith and reasonable offer component"; (5) specify the date on which Covert would receive payment; and (6) specify the date by which Covert would be required to surrender the vehicle. Covert also objected that the offer was unreasonable given the early stage of the litigation: "[Covert] is unable to fully analyze the value of [Covert's] claims against Defendants, such as the willfulness and maliciousness of Defendants' actions, as the complaint was filed less than three (3) months ago, and adequate discovery has not taken place."

On January 5, 2018, three weeks before the date then set for trial, FCA served a second section 998 offer. The offer was identical in all material respects to the first section 998 offer, except the settlement payment was raised to $145,000. Covert did not serve objections to the second offer and did not accept it before it lapsed.

C.    *Jury Verdict and Judgment*

After an eight-day jury trial, starting on May 6, 2019, the jury returned a special verdict finding FCA liable for breach of express written warranty and not liable for breach of implied warranty and fraudulent concealment. The jury awarded Covert $42,416 in damages based on its finding that Covert paid $49,726 for the vehicle and incurred $5,500 in incidental and consequential damages, less $12,810 for the value of Covert's use of the vehicle based on the 27,836 miles driven. The jury also imposed a penalty of $6,000, for a total award of $48,416. On

6

June 12, 2019 the trial court entered judgment on the jury's verdict, leaving open the determination of prejudgment and postjudgment interest, attorneys' fees, and costs, which would be included in an amended judgment.

D.     *Postjudgment Motions for Attorneys' Fees and Costs*

Following entry of judgment, Covert filed a memorandum of costs seeking $55,015 in costs, including $27,630 in expert witness fees, and a motion for $294,433 in attorneys' fees (using a lodestar of $196,289 with a 50 percent enhancement). Covert also filed a motion for prejudgment interest of at least $14,206.[5] FCA filed its own memorandum of costs, seeking $69,178 in costs, including $66,951 in expert witness fees.

FCA filed a motion to tax Covert's costs, arguing section 998, subdivision (c)(1), precluded Covert's recovery of costs, including expert witness fees, incurred after the first section 998 offer because FCA's offer of $51,000 exceeded Covert's total award of $48,416.[6] FCA likewise opposed Covert's motion for attorneys' fees, arguing Covert's recovery was less than either

---

[5]     Covert sought prejudgment interest calculated either from the date of the purchase of the vehicle ($37,414) or from the filing of the complaint ($14,206).

[6]     FCA also objected to many of the costs claimed by Covert as nonrecoverable under section 1033.5, subdivision (b). In its opposition to Covert's motion for attorneys' fees, FCA also challenged the reasonableness of the attorneys' bills, the severability of fees billed to the unsuccessful fraud cause of action, the lodestar, and the application of a multiplier. FCA does not raise these challenges on appeal.

7

of FCA's section 998 offers, and therefore the subsequent attorneys' fees were not reasonably incurred.

FCA argued that both its offers were valid and Covert's attorneys had executed almost identical section 998 offers made by FCA in prior lawsuits, which showed that Covert's attorneys were capable of evaluating these offers but instead "determined to risk it all at trial, rather than earnestly contemplate the true value of their clients' case."

Covert opposed FCA's motion to tax costs and moved to tax FCA's costs on the basis both section 998 offers were invalid on the grounds set forth in his objections to the first offer, and the first section 998 offer was premature and not ascertainable.[7] In his reply brief in support of his motion for attorneys' fees, Covert highlighted that the failure of the offers to specify when FCA would pay and when Covert would need to surrender the vehicle were problematic because in similar lawsuits FCA had often delayed this process for months, forcing plaintiffs' attorneys regularly to file motions to enforce the settlements and to seek sanctions.[8]

---

[7] Covert also argued in his motion to tax FCA's costs that even if FCA's first section 998 offer was valid, his recovery would ultimately exceed the offered $51,000 because it would include at least $14,206 in prejudgment interest. However, the trial court denied prejudgment interest.

[8] Covert requests we take judicial notice of a writ of execution, declaration of accrued interest, and declaration in support of calculation on interest accrued on unpaid judgment that Covert filed in the trial court after this appeal was taken, which he contends is evidence he was reasonably concerned FCA would fail to perform its payment obligations under the

8

After a hearing, on November 26, 2019 the trial court issued a three-page order ruling on the parties' respective motions to tax costs and Covert's motions for attorneys' fees and prejudgment interest. The court denied FCA's motion to tax costs, finding Covert was the prevailing plaintiff on his Song-Beverly Act claim, and thus, entitled under Civil Code section 1794, subdivision (d), to recover all reasonable costs and expenses, and further, Covert's claimed costs were reasonable. The court granted Covert's motion for attorneys' fees in part, finding the bills and rates were reasonable and Covert was entitled to recover $196,289 in fees billed, but without a multiplier. The court granted Covert's motion to tax FCA's costs, sustaining Covert's objections to the first section 998 offer on the grounds it "was vague, ambiguous and uncertain, did not address [Covert's] entitlement to prejudgment or postjudgment interest, did not specify whether it would require [Covert] to sign a separate release, did not include a provision concerning good faith settlement, and was unreasonable." The court did not address FCA's second section 998 offer. Finally, the court denied Covert's motion for prejudgment interest, finding the vehicle's defects and the mileage at which the defects presented were contested issues not ascertainable before trial.

---

section 998 offers absent a term specifying the time for payment. We deny Covert's request because the documents were not before the trial court and are not relevant on appeal. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."]; *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1223, fn. 3 [denying judicial notice as to documents that were not relevant to court's analysis].)

9

FCA timely appealed from the November 26, 2019 orders.[9]

**DISCUSSION**

A.    *Recovery of Costs Under Section 998*

"""[C]osts" of a civil action consist of the expenses of litigation . . . .  The right to recover any such costs is determined entirely by statute.'"  (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1148; accord, *Khosravan v. Chevron Corp.* (2021) 66 Cal.App.5th 288, 294 (*Khosravan*).)  Section 998, subdivision (b), provides, "Not less than 10 days prior to commencement of trial or arbitration . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated at that time.  The written offer shall include a statement of the offer, containing the terms and conditions of the judgment or award, and a provision that allows the accepting party to indicate

[9]    Although FCA's notice of appeal listed only Covert's motion for attorneys' fees and Covert's motion to tax costs, we construe the notice to include FCA's appeal from the trial court's denial of FCA's motion to tax costs because the notice stated FCA was appealing from the orders entered on November 26, 2019.  (See Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed."]; *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 ["Rule 8.100(a)(2)'s liberal construction requirement reflects the long-standing "'law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'""])

acceptance of the offer by signing a statement that the offer is accepted." Section 998, subdivision (c)(1), provides, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff . . . shall pay the defendant's costs from the time of the offer. In addition, . . . the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial . . . , or during trial . . . , of the case by the defendant." Section 998 thus modifies the general cost recovery provisions of sections 1031 and 1032. (§ 998, subd. (a) ["The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section."].)

On a motion to strike or tax costs, "[t]he burden is on the offering party to demonstrate that the offer is valid under section 998." (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86; accord, *Khosravan, supra*, 66 Cal.App.5th at p. 294.) "The offer must be strictly construed in favor of the party sought to be bound by it." (*Ignacio*, at p. 86; accord, *Khosravan*, at p. 295.) "'We independently review whether a section 998 settlement offer was valid. In our review, we interpret any ambiguity in the offer against its proponent.'" (*Prince v. Invensure Ins. Brokers, Inc.* (2018) 23 Cal.App.5th 614, 622; accord, *Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 20 (*Menges*) [the validity of an offer to compromise under section 998 "is subject to de novo review"].)

"'An offer to compromise under . . . section 998 must be sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the

11

offer.'" (*Menges, supra*, 59 Cal.App.5th at p. 26; accord, *Khosravan, supra*, 66 Cal.App.5th at p. 295.) "The inclusion of nonmonetary terms and conditions does not render a section 998 offer invalid; but those terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer." (*Menges*, at p. 26; accord, *Khosravan*, at p. 295; *Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697 (*Valentino*) ["[A]n 'offer' includes all its terms and conditions and must be evaluated in the light of all those terms and conditions."].)

"'To further the purposes of promoting reasonable settlement under section 998, we must consider the validity of section 998 offers as of the date the offers are served.'" (*Khosravan, supra*, 66 Cal.App.5th at p. 295; accord, *Valentino, supra*, 201 Cal.App.3d at p. 698 [the value of terms and conditions of a section 998 offer must be evaluated "as of the time" the offer was made "without the benefit of hindsight"].) "Where a defendant's settlement offer contains terms that make it 'exceedingly difficult or impossible to determine the value of the offer to the plaintiff[,] . . . a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff. Instead, the court should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting under Code of Civil Procedure section 998.'" (*Khosravan, supra*, 66 Cal.App.5th at p. 295; accord, *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 766 (*Fassberg*); see *Valentino,* at p. 700 [courts should not "engage[] in pure guesswork"].)

12

Once the offeror shows the section 998 offer is valid, the burden shifts to the offeree to show the offer was not made in good faith. (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 926 (*Licudine*); *Adams v. Ford Motor Co.* (2011) 199 Cal.App.4th 1475, 1484 (*Adams*).) Only settlement offers made in good faith are effective under section 998. (*Licudine*, at p. 924; *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 698 (*Elrod*) ["[w]e therefore conclude the Legislature intends that only good faith settlement offers qualify as valid offers under section 998"].) "'"Where . . . the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998."'" (*Adams*, at p. 1484; accord, *Khosravan supra*, 66 Cal.App.5th at p. 295.)

However, an offer is only made in good faith if the offer "'"carr[ies] with it some reasonable prospect of acceptance."'" (*Licudine, supra*, 30 Cal.App.5th at p. 924; accord, *Adams, supra*,199 Cal.App.4th at p. 1483.) "Whether a section 998 offer has a reasonable prospect of acceptance is a function of two considerations, both to be evaluated in light of the circumstances "'at the time of the offer'" and "'not by virtue of hindsight.'" [Citations.] First, was the 998 offer within the 'range of reasonably possible results' at trial, considering all of the information the offeror knew or reasonably should have known? [Citation.] Second, did the offeror know that the offeree had sufficient information, based on what the offeree knew or reasonably should have known, to assess whether the 'offer [was] a reasonable one,' such that the offeree had a 'fair opportunity to

13

intelligently evaluate the offer'?" (*Licudine*, at pp. 924-925; accord, *Adams*, at p. 1485.)

"Although the party making a 998 offer generally has the burden of showing that [the] offer is valid [citations], it is the 998 offeree who bears the burden of showing that an otherwise valid 998 offer was not made in good faith." (*Licudine, supra,* 30 Cal.App.5th at p. 926; accord, *Elrod, supra,* 195 Cal.App.3d at p. 700.) "Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion." (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 877; accord, *Licudine*, at p. 923.)

B.    *The Interplay Between Code of Civil Procedure Section 998 and Civil Code Section 1794*

Civil Code section 1794, subdivision (d), provides that a prevailing buyer in an action under the Song-Beverly Act "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Accord, *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 506.)

FCA contends the cost-shifting provisions of section 998 supersede a buyer's entitlement to attorneys' fees under Civil Code section 1794, subdivision (d), citing *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718 (*Duale*).  In *Duale*, the Court of Appeal analyzed the interplay between Code of Civil Procedure section 998 and Civil Code section 1794 and concluded

14

the trial court erred in declining to apply section 998 to limit the prevailing Song-Beverly Act plaintiffs' recovery of attorneys' fees where the defendants' section 998 offer exceeded the verdict for the plaintiffs. The court based its analysis on *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 1000 (*Murillo*), in which the Supreme Court held with respect to prevailing defendants that Civil Code section 1794 "provides no exception to the provisions of section 998."

In *Murillo*, the defendant sellers of mobile homes prevailed at trial on the plaintiff buyer's Song-Beverly Act claims. (*Murillo, supra*, 17 Cal.4th at pp. 988-989.) The trial court denied the buyer's motion to strike or tax costs and awarded the sellers their prevailing party costs under Code of Civil Procedure section 1032, subdivision (b), and, because the buyer rejected the sellers' settlement offer, the court awarded the sellers their expert witness fees under Code of Civil Procedure section 998. The Supreme Court upheld the trial court's ruling, rejecting the buyer's contention that Civil Code section 1794 provided the exclusive mechanism for cost recovery in a Song-Beverly Act case and precluded recovery of costs under Code of Civil Procedure sections 998 and 1032. (*Murillo*, at pp. 988, 990.) Applying principles of statutory construction, the Supreme Court explained that Code of Civil Procedure section 1032, subdivision (b), grants a prevailing party the right to recover costs "'[e]xcept as otherwise expressly provided by statute,'" and Civil Code section 1794, subdivision (d), did not expressly prohibit prevailing sellers from recovering their costs. (*Murillo*, at pp. 990-991, italics omitted.)

In response to the buyer's contention the three cost-recovery provisions were inconsistent, the *Murillo* court reasoned

15

the sections could be reconciled:  "On the one hand, if a buyer should prevail in an action under the [Song-Beverly] Act, he or she is entitled to costs, expenses, and attorney fees as set forth in Civil Code section 1794(d).  On the other hand, if a seller should prevail in an action brought under the Act, it is entitled to costs under section 1032(b).  We thus perceive no conflict or inconsistency . . . ."  (*Murillo, supra*, 17 Cal.4th at p. 992.)  Further, "[h]aving concluded Civil Code section 1794(d) fails to set forth an express exception to the general cost-recovery rule set forth section 1032(b), we likewise conclude it provides no exception to the provisions of section 998.  Section 998 explicitly states that it 'augment[s]' section 1032(b).  Thus, the requirements for recovery of costs and fees under section 998 must be read in conjunction with section 1032(b), including the requirement that section 998 costs and fees are available to the prevailing party '[e]xcept as otherwise *expressly* provided by statute.'"  (*Murillo*, at p. 1000.)

In *Duale*, the Court of Appeal acknowledged that "*Murillo* did not consider the situation posed here, i.e., when a seller who does not prevail at trial claims entitlement to section 998 costs and fees."  (*Duale, supra*, 148 Cal.App.4th at p. 727.)  The court nonetheless concluded, "We see no reason not to extend the Supreme Court's reasoning in *Murillo* to include the circumstances posed here.  Nothing in the relevant statutes or applicable case law suggests the Legislature intended to exempt lemon law plaintiffs from the 'carrot and stick' of section 998's provisions encouraging settlement of pending cases.  [Citation.]  Nor is the Song-Beverly Act's purpose inconsistent with the application of the section 998 provision restricting the ability of prevailing plaintiffs to recover attorney fees and costs if they fail

16

to recover more at trial than a rejected pretrial settlement offer. The [A]ct allows prevailing injured car buyers to recover attorney fees and costs in order to render such lawsuits 'economically feasible' [citing *Murillo, supra*, 17 Cal.4th at p. 994]; but declining to award such a buyer postoffer attorney fees and costs if he has refused a reasonable pretrial settlement offer does not defeat that purpose.  An injured plaintiff may be encouraged to sue by the prospect of recovering his costs if successful, but no articulated public policy is served by allowing him to maintain a lawsuit that loses its economic viability by virtue of the seller's willingness to settle on terms better than those a jury will award." (*Duale*, at p. 728.)

In his respondent's brief, Covert contends we should reject *Duale*'s "unsound expansion of *Murillo*" because the Supreme Court's holding in *Murillo* was based on the court's reconciliation of the cost-recovery statutes in the context of a prevailing seller, but where the buyer prevails, there is a conflict between Civil Code section 1794 and the cost-recovery provisions of Code of Civil Procedure sections 998 and 1032.  We agree with Covert that *Murillo*'s finding that there is no conflict between Civil Code section 1794 and Code of Civil Procedure sections 998 and 1032 does not hold true in the context of a prevailing buyer who rejects a section 998 offer.  In that situation, the prevailing buyer would be entitled to attorneys' fees and costs under Civil Code section 1794, but the seller would be entitled to its costs, including expert witness fees, under Code of Civil Procedure sections 998 and 1032, as long as it made a valid good faith offer that exceeded the buyer's recovery.

However, Covert's argument still fails because, as the Court of Appeal explained in *Duale, supra*, 148 Cal.App.4th at

page 728, the Supreme Court's holding in *Murillo* was also premised on the Legislature's expressed intent in section 998 to encourage settlement. (*Murillo, supra*, 17 Cal.4th at p. 1001.) "'If we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views.'" (*In re A.N.* (2020) 9 Cal.5th 343, 351-352; accord, *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 189.) As the *Murillo* court explained with respect to the legislative intent of the Song-Beverly Act and Code of Civil Procedure section 998, "Although the Legislature's purpose in enacting the Song-Beverly Act was admittedly to encourage consumers to enforce their rights under the Act, nothing in Civil Code section 1794(d) suggests this legislative purpose should override the Legislature's desire—expressed in section 998—to encourage the settlement of lawsuits." (*Murillo*, at p. 1001.)

Regardless of which party prevails at trial, there is no conflict between the Song-Beverly Act's incentives that are designed to make it economically feasible for a buyer to seek redress through litigation, notwithstanding that his or her damages will generally be limited to include only the vehicle's value, civil penalties up to double the amount of damages, and incidental damages (thus providing for only limited attorneys' fees under a contingency fee agreement), and Code of Civil Procedure section 998's incentive to encourage fair pretrial settlements. (*Duale, supra*, 148 Cal.App.4th at p. 728.) Indeed, the two provisions working in tandem create a more efficient mechanism for bringing consumers substantial relief by incentivizing the filing of an action to seek redress while encouraging a reasonable settlement that reduces the delay and

18

legal expenses of trial. Accordingly, we conclude that a valid and reasonable section 998 offer by the seller, where the buyer recovers less than the offer, precludes recovery by the buyer of postoffer attorneys' fees and costs under Code of Civil Procedure section 1794, subdivision (d).[10]

C.      *FCA's Section 998 Offers Were Valid*

FCA contends the trial court erred in sustaining Covert's objections to the first section 998 offer and in impliedly invalidating the second offer with identical nonmonetary terms on the same grounds.[11]  Covert responds that the nonmonetary terms made the offers uncertain, and FCA, as the party seeking to enforce the offers, failed to meet its burden to demonstrate their validity.  We review the validity of the offers de novo and conclude they were "'sufficiently specific to allow the recipient to

---

[10]      In *Hanna v. Mercedes-Benz USA, LLC, supra,* 36 Cal.App.5th at page 508, we upheld an award of attorneys' fees and costs to the plaintiff buyer on her Song-Beverly Act claim but reversed the attorneys' fees award as improperly calculated.  We assumed, but did not specifically reach, that a defendant's valid and reasonable section 998 offer would bar a prevailing Song-Beverly Act plaintiff's recovery of attorneys' fees and costs.  We concluded that the plaintiff's rejection of the defendant's section 998 offer did not bar the plaintiff's recovery of attorneys' fees and costs because the offer contained unfavorable terms, and "[r]ejecting a settlement offer because of unfavorable terms is neither unreasonable nor a permissible ground for denying an award of attorney fees under the Song-Beverly Act." (*Ibid.*)

[11]      We follow the parties' approach to treat Covert's objections as if they were asserted with respect to both section 998 offers.

19

evaluate the worth of the offer and make a reasoned decision whether to accept the offer.'" (*Menges, supra,* 59 Cal.App.5th at p. 26.)

### 1.     *Failure to address post-acceptance attorneys' fees*

The section 998 offers provided, "[D]efendants offer to pay reasonable costs, expenses and attorneys' fees based on actual time extended pursuant to Civil Code section 1794(d) as stipulated by the parties or, if the parties cannot agree, upon motion to the Court, having jurisdiction over this action."  Covert objected that he was "unable to ascertain whether Defendants are offering to pay post-acceptance fees that may be incurred in this litigation."  Covert argued that if he were required to pay his attorneys for "post-offer clarification, enforcement of the offer, or any appeals or writs following rulings related to any of the foregoing," those expenses could "essentially eviscerate" the monetary offer.

Covert's objection lacks merit.  The payment provision of the section 998 offers expressly incorporated Civil Code section 1794, subdivision (d), which provides, "If the buyer prevails in an action under this section, the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action."  Covert has provided no authority for the proposition that post-offer attorneys' fees cannot be recovered in a motion under Civil Code section 1794, subdivision (d), as fees incurred in the

20

"prosecution of [the] action." Covert's entitlement to fees would end only when prosecution of the action ends upon dismissal.

2. *Failure to address prejudgment and postjudgment interest*

Covert objected that FCA's section 998 offers did "not address [Covert's] entitlement to pre-judgment interest or post-judgment interest." This objection lacks merit. "Prejudgment interest is an element of damages, not a cost." (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 43.) Covert's complaint included a prayer for damages, including prejudgment interest, and thus in evaluating the section 998 offer, Covert necessarily had to weigh the amount offered against his potential trial recovery, including prejudgment interest. The trial court ultimately found Covert was not entitled to prejudgment interest because the amount of damages was a contested issue not ascertainable before trial. (See *Duale, supra*, 148 Cal.App.4th at p. 729 [trial court properly disallowed prejudgment interest on Song-Beverly Act award because the damages depended on trial resolution of disputed warranty-related issues].) That Covert's right to prejudgment interest was questionable may have made it difficult for him to estimate his likely trial recovery, but no more so than the amount of damages he was likely to recover at trial.

Covert's objection that the section 998 offers did not address postjudgment interest borders on the frivolous. The offers provided "that a judgment will not be entered," and thus, there would be no unpaid judgment on which interest would be owed.

21

3. *Failure to specify whether FCA would require a separate release*

Covert objected that the section 998 offers did not specify whether he would be required to sign a separate release agreement. This objection fares no better. The section 998 offers provided for payment "in exchange for dismissal of this action with prejudice in its entirety and return of the vehicle that is the subject of this lawsuit." This language did not create a likelihood that Covert would have to provide a release any broader than the lawsuit that was being dismissed. *Goodstein, supra,* 27 Cal.App.4th 899 is instructive. This court in *Goodstein* rejected the plaintiff's argument that a section 998 offer that required execution of a general release with a dismissal with prejudice was invalid because the terms of the release were not specified. (*Id.* at p. 907.) Because the offer's requirement of a release was preceded by the phrase "'in full settlement of this action,'" this court concluded the offer could not reasonably be construed to require a broader release of present and future possible causes of action against the defendant. (*Ibid.*; see *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 272 [where section 998 offer required "'mutual release of all current claims against one another'" and "'mutual dismissal with prejudice of the parties' lawsuits against one another,'" offer could be valued because, construing the language to be valid and enforceable, it was limited to release of claims in the lawsuit].)

Here, the offers did not include a release requirement at all. Covert's contention the absence of a release requirement could somehow bind him to a broad release is even further afield from the positions rejected by the courts in *Goodstein* and

22

*Lithicum* and is not supported by any reasonable construction of the offers.

4. *Failure to contain an express good faith provision*

Covert objected that the offers "fail[ed] to contain an express good faith and reasonable offer component," and therefore was invalid. In its order sustaining the objection, the trial court characterized the defect as the omission of a provision "concerning good faith settlement." On appeal, FCA argues that section 998 does not require that an offer of compromise contain a "reasonable offer" or "good faith settlement" provision, and it is unclear what language Covert believes was required. Covert fails to address in his respondent's brief why the lack of a good faith offer component rendered the offers uncertain, or what such a component would entail. We reject Covert's position as lacking support.

5. *Lack of specific payment date*

Covert objected that the lack of a specific date by which FCA was required to make the settlement payment rendered the section 998 offers uncertain. Covert argued that FCA regularly delays payment of settlement amounts for months, and in other Song-Beverly Act lawsuits against FCA, Covert's attorneys "have been forced to regularly file motions to enforce settlement and for sanctions" when the offer does not contain a specific date for payment. In his respondent's brief, Covert postulates two possible scenarios, one in which a section 998 offer requires a plaintiff to dismiss the action with prejudice 20 days before payment, and another in which the plaintiff must dismiss the action with prejudice 20 days after payment, observing that the

23

second scenario is clearly more valuable to a plaintiff. Covert's argument is based on a false premise—there is nothing in the section 998 offer that would require Covert to dismiss his case before FCA makes its payment.

Moreover, as FCA argues, the Courts of Appeal have repeatedly upheld the validity of section 998 offers without a payment date. (See, e.g., *Goodstein, supra*, 27 Cal.App.4th at p. 905 [bank's offer provided that it would pay Goodstein $150,000 "'[i]n full settlement of this action'" in exchange for a request for dismissal and "'execution and transmittal of a General Release by [Goodstein] in favor of [Bank],'" with the parties to bear their own costs and attorneys' fees]; *Auburn Woods I Homeowners Association v. State Farm General Insurance Company* (2020) 56 Cal.App.5th 717, 726 [offer provided for payment of $35,000 "'in full settlement of all claims . . . asserted by [HOA] in this action against [State Farm] or Frank Lewis or both'" in exchange for request for dismissal with prejudice and execution of settlement agreement and release that would "'forever end this case and the underlying disputes between [HOA] and each defendant'"].)

Covert cites no authority for his contention that an offer to pay money in exchange for a dismissal without a payment date renders the offer invalid. Further, under FCA's section 998 offers, Covert controlled when he would dismiss the action, and he was entitled to recover his attorneys' fees and costs reasonably incurred in prosecuting the action. These provisions created a significant disincentive for FCA to engage in gamesmanship in delaying payment.

24

6. *Lack of specific vehicle surrender date*

FCA offered a monetary payment "in exchange for dismissal of this action with prejudice in its entirety and return of the vehicle."  Covert objected the offers "lack[ed] specificity regarding the date [Covert] will be required to surrender the Subject Vehicle, thus making the offer uncertain."  Covert agues in his respondent's brief that the absence of a term linking FCA's payment to Covert's surrender of the vehicle creates a potential for abuse because FCA could require Covert to return the vehicle before making the settlement payment, leaving Covert with no vehicle and no compensation.  As he argues, even if the trial court were to construe the section 998 offers to require FCA to perform within a reasonable amount of time, "what is reasonable to a global corporation is not necessarily reasonable to an individual consumer.  For example, while corporations may construe a reasonable time for payment on a commercial account to be 30 days, it is unreasonable to expect a consumer to endure 30 days without any vehicle or the funds to buy a new one." (Italics omitted.)

Covert's objection has superficial appeal because FCA could refuse to make a settlement payment until the vehicle is surrendered.  But this does not invalidate the offer for lack of certainty.  For a section 998 offer to be valid, "[a]ny nonmonetary terms or conditions must be sufficiently certain and capable of valuation to allow the court to determine whether the judgment is more favorable than the offer." (*Fassberg, supra*, 152 Cal.App.4th at pp. 764-765; accord, *MacQuiddy v. Mercedes-Benz USA, LLC* (2015) 233 Cal.App.4th 1036, 1050 ["To be valid, an offer under section 998 may include nonmonetary terms and conditions, but it must be unconditional."].)  Covert had sufficient

25

information on which to make a reasoned decision whether to accept FCA's offers. The risk he identifies—surrendering his car before being paid—is the same risk posed by entry of a judgment after trial. As with the payment date, Covert can ensure compliance before dismissing the action, which increases the value of the settlement relative to a trial recovery.

*MacQuiddy v. Mercedes-Benz USA, LLC, supra*, 233 Cal.App.4th at page 1050, relied on by Covert, is not to the contrary. There, the Court of Appeal concluded a section 998 offer was ambiguous, and thus invalid, where the defendant offered to repurchase the plaintiff's vehicle "'in an undamaged condition, save normal wear and tear,'" because "[t]his condition inserted uncertainty into the offer . . . . Whether the car was in an 'undamaged condition' was not defined, nor was it clear what would happen if [plaintiff] accepted the offer, but [defendant] subsequently concluded the car was 'damaged' beyond normal wear and tear." (*Ibid*.) The court explained it "fail[ed] to see how, following trial, the [trial] court could compare the value of obtaining the repurchase of the car without regard to its condition to the offer requiring that the car be 'undamaged,' in order to determine whether [plaintiff] received a more favorable judgment than the offer. Such an evaluation would require a factual determination of whether the car was damaged." (*Ibid*.) Here, by contrast, the lack of a vehicle surrender date did not prevent Covert from evaluating the value of the offers, even assuming some delay in payment, against his trial expectations.

D. *The Trial Court Abused Its Discretion in Failing To Consider Whether the First Section 998 Offer Was Premature*

Because the section 998 offers were valid, Covert had the burden to show the offers were not made in good faith in order to avoid their application.[12] (*Licudine, supra*, 30 Cal.App.5th at p. 926; *Adams, supra,* 199 Cal.App.4th at p. 1484.) Covert objected to the first section 998 offer on the ground it was "unreasonable at this stage in the litigation" because "[Covert] is unable to fully analyze the value of [Covert's] claims against [FCA], such as the willfulness and maliciousness of [FCA]'s actions, as the complaint was filed less than three (3) months ago, and adequate discovery has not taken place." In sustaining Covert's objections, the trial court listed Covert's six objections, including that the offer was "unreasonable"; however, the court

---

[12] In his respondent's brief, Covert argues that even if FCA's section 998 offers were enforceable, section 998 did not apply. He contends the $49,726 judgment was more favorable than the offers because the judgment established FCA's liability and Covert's right to postjudgment interest and would be enforceable under the Enforcement of Judgments Law, section 680.010 et seq. However, these asserted benefits of a judgment over a dismissal are only valuable if FCA fails to pay the judgment, requiring use of the enforcement tools and payment of postjudgment interest. By contrast, with respect to the section 998 offer, Covert can simply not dismiss the lawsuit until FCA pays, giving him a superior mechanism to ensure FCA's compliance. In addition, Covert's argument would require us to value a judgment at a significantly higher amount than a dismissal. To do so would cast doubt on all section 998 offers predicated on a dismissal without a judgment, undermining this court's longstanding decision in *Goodstein, supra*, 27 Cal.App.4th at page 905.

27

focused on the arguments relating to validity without addressing whether the offer was premature, and therefore not in good faith.

FCA urges us to reverse the trial court's order because "given that the trial court sustained all of Covert's objections across the board, with no finding on the reasonableness of FCA's first section 998 offer, the trial court did not exercise any discretion." We agree that notwithstanding the court's statement the offer was "unreasonable," it does not appear from the record that the court considered whether the first section 998 offer—served 63 days after the complaint was filed—was unreasonable because it was made prior to adequate discovery on potential penalties or fraud. This was an abuse of discretion. (See *Fadeeff v. State Farm General Insurance Co.* (2020) 50 Cal.App.5th 94, 104 ["A trial court's failure to exercise discretion is itself an abuse of discretion."]; *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176 ["A failure to exercise discretion is an abuse of discretion."].)

Covert's argument that the first section 998 offer was unreasonably premature, which he argued (briefly) in his objections and posttrial motions, was based on the fact that discovery had not yet taken place at the time the offer expired for Covert. Thus Covert did not have sufficient information on which to assess whether FCA's violations of the Song-Beverly Act were willful, supporting civil penalties,[13] and whether FCA was liable

---

[13] Under Civil Code section 1794, subdivision (c), a buyer who establishes a seller's willful noncompliance with the requirements of the Song-Beverly Act may receive "a civil penalty which shall not exceed two times the amount of actual damages." A finding of willfulness may be made where the seller "knew of its obligations but intentionally declined to fulfill them."

28

for fraud. FCA contends Covert's detailed, 32-page complaint shows he had extensive information prior to filing the lawsuit about the defects in FCA's integrated power module, and he was aware that FCA knew these defects had caused other owners of his vehicle model to have problems similar to those he experienced.[14] However, significant factual issues remain as to

(*Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 894.) Conversely, "a violation is not willful if the defendant's failure to replace or refund was the result of a good faith and reasonable belief the facts imposing the statutory obligation were not present. This might be the case, for example, if the manufacturer reasonably believed the product *did* conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund." (*Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 185; see *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 815 [trial court erred in excluding from trial evidence of seller's belief it could repair a damaged trailer, "including the nature and details of those prospective repairs" and whether "it had not yet been given a reasonable number of repair attempts."].)

[14]    FCA cites *Whatley-Miller v. Cooper* (2013) 212 Cal.App.4th 1103, 1113-1114 for the proposition that a section 998 offer is not unreasonable when it is served at the outset of litigation. There, the Court of Appeal concluded the trial court did not abuse its discretion in rejecting a physician's argument in a malpractice action that a plaintiff's section 998 offer was premature because it was served two months after the physician responded to the complaint, where information regarding the decedent patient's income and the financial impact of his death had been produced in pre-offer discovery and the physician did not object to the offer as premature when it was made. (*Ibid.*; see *Barbra v. Perez* (2008) 168 Cal.App.4th 444, 450-451 [trial court did not abuse its

what FCA knew or should have known about Covert's specific vehicle based on his repair attempts at an FCA-authorized facility. For example, was a defect in the integrated power module in Covert's car the cause of his vehicle failures, and if so, was FCA aware of this fact? And did Covert know whether FCA was aware of this fact? Thus, there is a factual dispute as to whether the offeror (FCA) knew that the offeree (Covert) had sufficient information based on what the offeree knew, or reasonably should have known, "to intelligently evaluate the offer." (*Licudine, supra*, 30 Cal.App.5th at pp. 924-925.) Absent any findings by the trial court on this issue, we are ill-equipped to resolve whether FCA's first section 998 offer was made in good faith under the circumstances of this case. (See *Elrod, supra,* 195 Cal.App.3d at p. 699 ["'If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer.'"]) We remand for the trial court to determine in the first instance whether the first section 998 offer was premature and therefore not made in good faith.[15]

discretion in finding section 998 offer served with complaint was not premature where the parties had a "close, semi-familial relationship, and there was free flow of information between them," and the plaintiff informed defendant's agent that he had incurred about $70,000 in medical bills].)

[15] Covert did not argue in the trial court, and does not contend on appeal, that the second offer was made prematurely or otherwise was not made in good faith. We note the offer was made on the eve of trial (and thus, not premature), and the offer for $145,000 was approximately three times the judgment Covert obtained at trial. Therefore, Covert did not meet his burden to

## DISPOSITION

We reverse the trial court's November 26, 2019 orders granting Covert's motion to tax costs, granting in part Covert's motion for attorneys' fees, and denying FCA's motion to tax costs. We remand for the court to consider whether FCA's first section 998 offer was premature and therefore not a good faith offer under section 998.  If the court finds the offer was a good faith offer, it shall award FCA its costs, including expert witness fees, reasonably incurred after the first offer was served and deny Covert his attorneys' fees and costs.  If the court finds the first offer was not made in good faith, it shall award Covert his attorneys' fees and costs reasonably incurred prior to service of the second section 998 offer and award FCA its costs, including expert witness fees, reasonably incurred after the second offer was served.  The parties are to bear their own costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.  IBARRA, J.*

---

show the second offer was not made in good faith.  In light of our holding that the second offer was valid, the trial court did not err in finding the second section 998 offer was enforceable.

\*   Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/11/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ERIC ALVIN COVERT, | B303663 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC629240) |
| v. | |
| FCA USA, LLC, | |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed January 4, 2022 is modified as follows:  On page 19, in the last sentence of part B, delete Code of Civil Procedure and replace it with Civil Code, so the sentence reads:  Accordingly, we conclude that a valid and reasonable section 998 offer by the seller, where the buyer recovers less than the offer, precludes recovery by the buyer of postoffer attorneys' fees and costs under Civil Code section 1794, subdivision (d).

Further, the opinion filed January 4, 2022 was not certified for publication.  It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c),

1

appellant's request for publication pursuant to California Rules of Court, rule 8.1120(a) is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words Not to be Published in the Official Reports appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

PERLUSS, P. J.            FEUER, J.            IBARRA, J.[*]

_____

[*]    Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2